UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CELSO LOPEZ MENDOZA,

Petitioner,

v.

WARDEN OF THE GOLDEN STATEANNEX, et al,

Respondents.

No.  1:25-cv-2030 CSK

ORDER

Petitioner, a native of Mexico who applied for admission to the United States on July 29, 2019, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner was initially detained by immigration officials and released on his own recognizance on July 30, 2019, pursuant to 8 U.S.C. § 1226.  (ECF No. 9-1 at 5.)  On September 6, 2025, petitioner reported to U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") office in Fresno where he was re-detained pursuant to 8 U.S.C. § 1225.  Petitioner has been in continuous detention since September 6, 2025.  This habeas action concerns petitioner's re-detention.  For the following reasons, the Court grants the petition for a writ of habeas corpus, and orders respondents to provide petitioner with a bond hearing within seven days from the date of this order.

---

[1]  The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 12.)

1

## I.   FACTUAL BACKGROUND

Petitioner is a native of Mexico.  (ECF No. 9-1 at 2 ¶ 6.)  On July 29, 2019, petitioner applied for admission to the United States at the San Luis Arizona Port of Entry.  (Id.)  After an interview and investigation, a Customs and Border Protection Officer determined that petitioner was not in possession of a valid entry document and deemed him inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(l) (Immigration and Nationality Act ("INA") § 212(a)(7)(A)(i)(l)).  (ECF No. 9-1 at 2.)  Petitioner was transferred to ICE/ERO for further processing.  (Id.)  The next day, petitioner was released into the United States on his own recognizance, expressly pursuant to 8 U.S.C. § 1226 (INA § 236).  (ECF No. 9-1 at 5.)  Petitioner was issued an Order of Release on Recognizance upon conditions set forth on ICE Form I-220A, which included enrollment in the Alternatives to Detention ("ATD") program.  (Id. at 5-9.)  Petitioner was warned that failure to comply with the conditions of his release "may result in revocation of [his] release and [his] arrest and detention" by ICE.  (Id. at 5.)  Petitioner's Order of Release on Recognizance was not canceled.  (Id. (section canceling release order due to failure to comply with release conditions remains blank).)

On September 25, 2019, a Notice to Appear on January 16, 2020 was issued, and advised petitioner he was subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (INA § 212(a)(7)(A)(i)(l)).[2]  (Id. at 11.)  The Notice to Appear was personally delivered to petitioner on October 16, 2019, and petitioner was provided oral notice in Spanish of the time and place of the hearing and of the consequences of failure to appear.  (Id. at 12.)

On January 16, 2020, petitioner appeared before an immigration judge for his first master calendar hearing.  (Id. at 2 ¶ 9.)

On August 9, 2025, an immigration judge ordered petition removed to Mexico.  (Id. at 16-18.)  The immigration judge noted that petitioner's asylum application was incomplete and failed to provide any explanation of why petitioner feared harm or mistreatment if deported to Mexico.  (ECF No. 9-1 at 17.)  The judge further noted that the case was "woefully prepared by prior

---

[2]  By contrast, petitioner was not placed in expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

counsel," and petitioner may have grounds to reopen the case based on ineffective assistance of counsel. (Id. at 17-19.)  On August 13, 2025, petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA").  (Id. at 20.)  Petitioner's appeal is pending.  (Id. at 2 ¶ 12.)

On September 6, 2025, petitioner appeared for a routine check-in with ICE officials and was detained.  (ECF No. 1 at 5, ECF No. 9-1 at 3 ¶ 13.)

In his unverified petition, petitioner asserts that he has complied with all his release conditions, and does not have a criminal record.  (ECF No. 1 at 5-6.)  Respondents do not contend that petitioner has violated any conditions of release, that petitioner was detained due to any release violation, or that petitioner was detained due to any criminal charges or convictions.[3] (See ECF Nos. 9, 9-1.)  Petitioner is the father of six minor children, from one years old to fifteen years old, and three of his children are U.S. citizens.  (ECF No. 1 at 3.)

## II.    PROCEDURAL BACKGROUND

On December 29, 2025, petitioner filed his pro se petition for writ of habeas corpus, which is not verified.  (ECF No. 1.)  On December 31, 2025, the court directed respondents to file a response to the petition within seven days and ordered that petitioner may file a reply within ten days after the response was filed.  (ECF No. 5.)  Respondents timely filed their response to the petition on January 7, 2026, and provided a declaration from Deportation Officer Armando Meneses.  (ECF Nos. 9, 9-1.)  Petitioner did not file a reply.  On January 13, 2026, this action was reassigned after the parties consented to the jurisdiction of a United States magistrate judge. (ECF No. 11.)

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality

---

[3]  As a result, the Court need not address the deportation officer's statement that "[g]overnment records show that, on or around August 5, 2020, petitioner was arrested for violations of California Vehicle Code sections 23152(a) (driving under the influence of alcohol) and 23152(b) (driving with a blood-alcohol content of 0.08% or higher), but also claims "[t]here are no records available on the disposition."  (ECF No. 9-1 at 2 ¶ 10.)

3

of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

**IV.    DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  Petitioner contends that his ongoing detention violates the Due Process Clause of the Fifth Amendment, and contends his detention is not justified because the government has not established that petitioner presents a risk of flight or danger to the community, and seeks an order for his release taking into account petitioner's ability to pay a bond, or, in the alternative, to order petitioner's release unless respondents provide petitioner with a hearing before an immigration judge to determine if petitioner presents a risk of flight or danger.  (ECF No. 1 at 17.)  Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2)(A) because petitioner is an "applicant for admission."  (ECF No. 9 at 2-3.)  Respondents do not address petitioner's Due Process Clause challenge.

A.    Applicability of 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)

The Court first addresses respondents' argument that § 1225(b)(2)(A) applies because petitioner is an "applicant for admission" and therefore subject to mandatory detention.  (ECF No. 9 at 2.)  At the time petitioner was released on his own recognizance on July 30, 2019, the Order of Release on Recognizance issued by the Department of Homeland Security ("DHS") expressly provided that petitioner was released under 8 U.S.C. § 1226.  (ECF No. 9-1 at 5) (issued "[i]n

accordance with section 236 of the INA").[4]

This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting respondent's interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the [Immigration and Nationality Act], canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the [Immigration and Nationality Act] is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases)); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at 3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

"These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros v. Kaiser, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases). By contrast, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of

---

[4] Section 236 of the INA is codified at 8 U.S.C. § 1226; section 235 of the INA is codified at 8 U.S.C. § 1225.

5

section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." Guerro Lepe v. Andrews, 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases). This Court incorporates and adopts the thorough and persuasive reasoning of the district court in Lepe, 2025 WL 2716910, at *3-9. As the district court found in Lepe, this Court also rejects the new interpretation of 8 U.S.C. § 1225(b)(2)(A) by respondent, and finds that petitioner was initially detained under 8 U.S.C. § 1226(a) and its implementing regulations, because petitioner had resided in this country for over six years since petitioner was released on his own recognizance pursuant to § 1226, and petitioner's September 2025 arrest and re-detention were not upon his arrival to the United States.

B.     Detention While Appeal of Removal Order Is Pending

Prior to petitioner's arrest and re-detention on September 6, 2025, an immigration judge ordered petitioner's removal to Mexico. (ECF No. 9-1 at 2, ¶ 11; ECF No. 9-1 at 16-17.) The immigration judge found that petitioner had abandoned any and all claims for relief or protection from removal, noting that the case was "woefully prepared by prior counsel," and petitioner may have grounds to reopen the case based on ineffective assistance of counsel. (Id. at 16, 17-18.) Petitioner's appeal to the BIA is pending. (Id. at 2 ¶ 12.)

1.     Removal Proceedings and Detention

Removal proceedings under 8 U.S.C. § 1229(a), the "usual removal process," involve an evidentiary hearing before an immigration judge. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020). Section 1226 of the INA provides that while removal proceedings are pending, a noncitizen "on a warrant," "may be arrested and detained" and that the government "may release the [noncitizen] on bond . . . or conditional parole." 8 U.S.C. § 1226(a)(2); accord Thuraissigiam, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country").

"Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] already in the country pending the outcome of removal proceedings," including noncitizens who are "present in the country" despite being "inadmissible at the time of entry." Jennings v.

6

Rodriguez, 583 U.S. 281, 288-89 (2018) (citing 8 U.S.C. § 1226).  "[O]nce inside the United States . . . the default rule" is set forth in § 1226(a):  "The Attorney General may issue a warrant for the arrest and detention of [a noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'"  Id. at 288 (quoting 8 U.S.C. § 1226(a)).  Following the noncitizen's arrest, the Attorney General "may continue to detain" the noncitizen or "may release" the noncitizen on bond or "conditional parole."  8 U.S.C. § 1226(a)(1)-(2).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention."  Jennings, 583 U.S. at 306 (citing 8 CFR §§ 236.1(d)(1)).  If, at this hearing, the detainee demonstrates that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the immigration judge will order his or her release.  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).

Upon a decision regarding removability by an immigration judge, either the noncitizen or the government may appeal the immigration judge's decision to the BIA.  8 C.F.R. §§ 124.15, 1003.1.  If the BIA upholds the removal order, the noncitizen may then appeal that decision to a U.S. Court of Appeals.  8 U.S.C. § 1252.

*2.      Petitioner is Not Subject to Detention Under 8 U.S.C. § 1231*

There is no final order of removal currently in place, and respondents do not contend otherwise.  See is 8 C.F.R. § 1241.1; Resp. Response (ECF No. 9).  Petitioner timely appealed the immigration judge's August 9, 2025 removal order, and that appeal remains pending before the BIA.  (ECF No. 9-1 at 3, 20-22.)

The governing law is 8 C.F.R. § 1241.1.  Section 1241.1 states that an order of removal becomes final (a) upon dismissal of an appeal by the BIA; (b) upon waiver of an appeal by the respondent; (c) upon expiration of time allotted for an appeal, assuming the noncitizen does not appeal within that time; (d) if certified to the BIA or Attorney General, upon the date of the subsequent decision ordering removal; (e) if an immigration judge orders the noncitizen removed in their absence, immediately upon the entry of the order; or (f) if an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the

7

voluntary departure period, or upon the failure to timely post a voluntary departure bond.  Id.

Here, petitioner's appeal before the BIA is pending.  Thus, petitioner is not subject to a final order of removal and is not detained under 8 U.S.C. § 1231.  Under section 1231(a), detention is required during the "removal period."  8 U.S.C. § 1231(a).  However, that statute also expressly provides that the removal period does not begin at least until the date the order of removal becomes administratively final.  8 U.S.C. § 1231(a)(1)(B)(i).  Because petitioner's appeal to the BIA is pending, petitioner's removal order is not final and thus the removal period has not begun.  See 8 U.S.C. § 1231(a)(1)(B)(i); see also Peralta Ayala v. M. Wofford, 2026 WL 249567, at *1 (E.D. Cal. Jan. 30, 2026) (where noncitizen appealed removal order and BIA stayed removal, the removal order is not yet administratively final, the removal period has not begun, so § 1231(a) does not apply); Jose Rojas-Lara v. United States, 2026 WL 172676, at *5 (D. Nev. Jan. 22, 2026) (where appeal of removal order remains pending before the BIA, noncitizen not subject to a final order of removal and is not detained under § 1231); Mayo v. Semaia, 2025 WL 3496774, at *4 (C.D. Cal. Dec. 5, 2025) ("because the Court does not find that any of the § 1241.1 conditions are present here, the Court finds that Mayo is not presently subject to a final order of removal.").

The Court therefore concludes that petitioner is detained pursuant to 8 U.S.C. § 1226.

C.    Due Process

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment. (ECF No. 1 at 6-7.)  Respondents do not address petitioner's due process claim.  (See ECF No. 9.) Respondent's asserted compliance with § 1225(b)(2)(A) does not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]"  Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84.

Here, petitioner's initial detention, then release pursuant to 8 U.S.C. § 1226 in July 2019 on his own recognizance subject to the ATD program, is similar because it allowed petitioner to

9

live in California subject to immigration supervision, but outside of custody for over six years. Such time allowed petitioner to form "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  This Court finds that petitioner's original release and time out of custody gave rise to a constitutionally protected liberty interest.

Petitioner's release pursuant to 8 U.S.C. § 1226(a) was premised upon a finding that, at the time of petitioner's release, he was not dangerous and was not a flight risk.  See 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in [8 U.S.C. § 1226](c)(1), under the conditions at section [8 U.S.C. § 1226](a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018); F.M.V. v. Wofford, 2025 WL 3083934, at *1 (E.D. Cal. Nov. 4, 2025).  In light of all of the foregoing, the Court finds that petitioner's prior release pursuant to 8 U.S.C. § 1226(a) created a reasonable expectation that he would be entitled to retain his liberty as long as he was not a flight risk and did not pose a danger to the community.  See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest); F.M.V., 2025 WL 3083934 at *4. This Court concludes that petitioner has a protected liberty interest in his release.  See Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause"); Ortega v. Kaiser, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); F.M.V., 2025 WL 3083934, at *4-5.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also

Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim for detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). For over six years, petitioner was free from custody before his re-detention.  Petitioner had a work permit, and obtained a Social Security number.  (ECF No. 1 at 6.)  The duration of his conditional release elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."  See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); Salcedo Aceros, 2025 WL 2637503, at *12 (finding that the noncitizen's risk of erroneous deprivation was high because a bond hearing would likely reveal that the noncitizen still presented no public safety or flight risk).  Civil immigration detention, which is "nonpunitive in

11

purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. The fact that petitioner reported to ICE for "a routine check-in appointment" on September 6, 2025 (ECF No. 9-1 at 3), demonstrates he was not a flight risk.

Here, petitioner has been detained since he reported for "a routine check-in appointment" on September 6, 2025 (ECF No. 9-1 at 3), without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. See, e.g., Rodriguez Diaz v. Kaiser, 2025 WL 3011852, at *11 (N.D. Cal. Sept. 16, 2025) ("If respondents wish to establish that re-detention is warranted by raising the effect of . . . [petitioner's] six alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so."); see also Cajina v. Wofford, 2025 WL 3251083, at *1, 6 (E.D. Cal. Nov. 21, 2025) (ordering petitioner's immediate release and enjoining and restraining respondents from re-detaining petitioner absent a pre-detention hearing, despite petitioner being charged with driving under the influence).

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondent's interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025). Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the government's interest is even lower because petitioner was previously released on his own recognizance after immigration officials determined he was not a flight risk or danger to the community, petitioner lived in the country for over six years on release without incident, complying with his release conditions and obtaining a work permit. See Pinchi, 2025 WL 1853763, at *2.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained. "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the

12

nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reason why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court concludes that petitioner is entitled to relief on his due process claim.

**VI.     CONCLUSION AND ORDERS**

Accordingly, IT IS HEREBY ORDERED that:

1.  The petition for writ of habeas corpus is GRANTED.

2.  Petitioner Celso Lopez Mendoza shall be released immediately from respondents' custody.  Respondents are ordered to provide petitioner with a copy of this order at or near the time of his release.

3.  Respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

4.  Within seven (7) days from the date of this order, respondents must file a status report, as to petitioner's status.

5.  The Clerk of the Court is directed to enter judgment for petitioner and close this case.

Dated:  February 5, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/mend2030.2241.pending.remov.hc.gr

13